IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
**(Baltimore Division)**

| | |
|---|---|
| In re<br><br>**JOSEPH G. GORSKI**,<br><br>Debtor | Bankruptcy Case No.:<br><br>19-11500- DER |

**THE UNITED STATES TRUSTEE'S OBJECTION
TO DEBTOR'S PROPOSED PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT**

The United States Trustee for Region Four, which includes the District of Maryland, Baltimore Division (the "United States Trustee"), in furtherance of the administrative responsibilities imposed pursuant to 28 U.S.C. § 586(a), hereby objects to the approval of Debtor's Disclosure Statement (Doc. 55).

In support thereof, the United States Trustee represents and argues as follows:

**LEGAL FRAMEWORK**

1. The basic structure of Chapter 11 of the Bankruptcy Code is a system where a plan of reorganization is proposed to the creditors who then vote on whether to accept or reject the plan. 11 U.S.C. §§ 1121, 1125-1129. After the plan is voted upon, the Court determines whether the plan can be "confirmed" by determining whether the statutory requirements for confirmation are met. 11 U.S.C. § 1129. Once the plan is "confirmed," it becomes a contract between the reorganized debtors and all of their creditors which replaces all of the debtors' prior obligations. *See, e.g., In re Shenandoah Realty Partners, L.P.*, 287 B.R. 867, 871 (Bankr. W.D. Va. 2002); *In*

*re Lacy*, 183 B.R. 890, 892 n.1 (Bankr. D. Colo. 1995); 11 U.S.C. § 1141.[1]

2.  In order to provide creditors with the information necessary to make an informed vote on the plan, the Bankruptcy Code requires the proponent of the plan to provide creditors with a "disclosure statement." 11 U.S.C. § 1125(b). The purpose of the disclosure statement is to provide creditors with the information about the debtor, the plan and their treatment thereunder, necessary for creditors to make an informed and reasoned vote. *In re Monnier Bros*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("[t]he primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan"); *In re Forest Grove, LLC*, 448 B.R. 729, 737 (Bankr. D.S.C. 2011) ("[t]he purpose of a disclosure statement is to clearly provide creditors with information regarding the debtor's plan and their treatment under that plan").

3.  Although precisely what information must be contained in a disclosure statement varies depending on the particulars of the case, a disclosure statement must contain "adequate information," which is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records ... that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a). "Adequate information" for disclosure statement purposes has been described as "all information that is reasonably necessary to permit creditors and parties-in-interest to fairly and effectively evaluate the plan." *In re Robert's Plumbing & Heating, LLC*, Case 10-23221, 2011 WL 2972092 at * 2 (Bankr. D. Md., July 20, 2011).

4.  While "adequate information" varies from case to case, Courts have held that the following types of information should be included in a disclosure statement:

---

[1] Rejection of the plan by a majority of creditors is not necessarily fatal to confirmation. *See e.g.* 11 U.S.C. § 1129(b).

    i.      The circumstances that gave rise to the filing of the case;

    ii.     A complete description of the available assets and their value;

    iii.    The anticipated future income of the debtor;

    iv.    The source of the information provided in the disclosure statement;

    v.     The condition and performance of the debtor while in chapter 11;

    vi.    Information regarding claims against the estate;

    vii.   A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

    viii.  The accounting and valuation methods used to produce the financial information in the disclosure statement;

    ix.    A summary of the plan of reorganization;

    x.     An estimate of all administrative expenses, including attorneys' fees and accountant's fees;

    xi.    The collectability of any accounts receivable;

    xii.   Any financial information, valuations or pro forma projections that would be relevant to creditors' determination of whether to accept or reject the plan;

    xiii.  Information relevant to the risks being taken by the creditors and interest holders;

    xiv.  The actual or projected value that can be obtained from avoidable transfers;

    xv.   The existence, likelihood and possible success of non-bankruptcy litigation; and

    xvi.  The tax consequences of the plan.

*See, e.g., Collier on Bankruptcy* ¶ 1125.02[2].

## **PROCEDURAL HISTORY**

5.    On February 4, 2019, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Doc. 1). Since that date Debtor has continued to operate as Debtor in

Possession under §§ 1107 and 1108 of the Bankruptcy Code.

6. On October 31, 2019, Debtor filed a Disclosure Statement for Chapter 11 Plan (the "Proposed Disclosure Statement") and a Plan of Reorganization (the "Proposed Plan"). (Doc. 55, 56.)

7. Very generally, Debtor proposes a three step plan:

    i. from the effective date to a proposed liquidation, monthly payments of $29,850 will be made to pre-petition secured, priority and unsecured creditors;

    ii. at an undetermined time, liquidation will result in proceeds sufficient to fully satisfy all secured debts except class three, which will be significantly reduced by $600,000, leaving sufficient proceeds to pay $250,000 to $450,000 toward Debtor's priority tax claims of $712.362;[2]

    iii. to plan termination, monthly payments of between $4,830 to $8,581 will be made to pre-petition priority and unsecured creditors.

(Proposed Disclosure Statement pp. 10, 14-20, 23; Proposed Plan p. 12.)

8. The Debtor proposes to pay 10% of the allowed claims of the General Unsecured Creditors, over the course of the five year plan. (Proposed Disclosure Statement pp. 18-19.)

9. Debtor proposes to retain his 100% equity interest in Tradeways, Ltd. ("Tradeways"), as well as his 70%[3] equity interest in 184 Duke of Gloucester, LLC. (The Proposed Disclosure Statement is silent as to Debtor's retention of the business interests, but they are not offered for sale to creditors or parties in interest.)

10. Debtor proposes to retain all personal property, including a vehicle, home

---

[2] It is unclear from the Proposed Disclosure Statement exactly what proceeds Debtor's Proposed Plan will require from the liquidation because the Proposed Disclosure Statement specifically does not discuss current balances due to any secured claimant and does not estimate balances that will be due at the time of liquidation.

[3] The remaining 30% interest in 184 Duke of Gloucester, LLC is owned by the Debtor's three children in equal shares.

furnishings, cash and investments, which he estimates at an approximate aggregate value of $20,000.00. (Proposed Disclosure Statement p. 10.)

11. As described below, the Disclosure Statement fails to provide adequate information.

## ARGUMENT

### The Disclosure Statement Lacks Adequate Information about Debtor's Business Assets and their Value

12. Debtor proposes to provide funding for the life of the plan from his salary and/or dividends from Tradeways, a corporation which is wholly owned and managed by the Debtor.

13. Debtor's individual tax returns for the 2016, 2017, and 2018 tax years show his salary for 2016 was approximately $10,600 per month, but decreased to $10,000 per month throughout 2017 and 2018.

14. The Proposed Plan calls for Tradeways to directly make payments of $10,000 per month to the Estate of Daniel N. Kohn, and $5,000 per month to the U.S. Department of Labor, debts for which Tradeways and the debtor are jointly liable. Combined, these two payments account for 40% of the pre-liquidation monthly disbursements, and 75% of the estimated post-liquidation monthly disbursements.

15. Absent disclosure of Tradeways' financial ability to support Debtor's reorganization as proposed, the Proposed Disclosure Statement fails to contain adequate information under 11 U.S.C. § 1125(a). *In re Hockenberry*, 457, B.R. 646, 659-60 (Bankr.S.D. Ohio 2011).

16. Nonetheless, other than the brief two paragraph summary provided on pp. 7-8 of the Proposed Disclosure Statement, Debtor has not provided any financial information about Tradeways.

17. Debtor posits that "Debtor's income from the operations of Tradeways will increase as export transactions are finalized." (Proposed Disclosure Statement p. 10.) As evidenced in the "Projected Cash Flow" attachment to the Proposed Plan (Doc. 55-2), Debtor projects that his wages from Tradeways will increase from $120,000 per year over the last three years pre-petition to $200,000 in 2020, further increasing by $10,000 each year throughout the life of the plan. This claim for an immediate and sustained increase in revenues of 65% or more is entirely unsupported, as Debtor has provided no information about accounts receivable, contract payments due, or expected future contracts.

18. Debtor's tax returns have shown declining performance by Tradeways and by 184 Duke of Gloucester, another company in which Debtor has an equity interest. 184 Duke of Gloucester had gains of $28,769 in 2016, losses of $4,826 in 2017, and losses of $458 in 2018. Tradeways had losses of $12,249 in 2016, a gain of $14,359 in 2017, and losses of $37,287 in 2018. The two entities have combined losses of over $11,000 over the course of the last three years.

19. In order for voting creditors to be provided adequate information under 11 U.S.C. § 1125(a), the Debtor would need to provide, at minimum, the following information for each entity: balance sheet, income statement, cash flow statement, payroll details, inventory, lists of prospective future contracts, and the last three years of state and federal tax filings.

20. Much of this information should have been provided by Debtor through the filing of required Periodic Reports Regarding Value, Operations, and Profitability of Entities in which Debtor holds a Controlling Interest, but Debtor has failed to file such reports despite several requests from the Office of the U.S. Trustee. Pursuant to the Provisions of Bankruptcy Rule 2015.3, the first of such reports became due seven days prior to the § 341 meeting held on March

6, 2019 and a first update became due July 31, 2019. Neither the initial nor updated filing has been made with the court for either of the two entities.

### The Disclosure Statement Omits Relevant Information about Liquidation of Debtor's Business Assets

21. The Debtor claims that Tradeways' liabilities exceed its assets and asserts that if liquidated, would yield no distribution to creditors. (Proposed Disclosure Statement p. 9.) Debtor also states, as discussed above, that he expects substantial increase in returns from Tradeways, which will be sustained over the course of the next five years and that Tradeways will take on and maintain significant repayment obligations. These statements are inconsistent, and as discussed above, not supported by business data.

22. The valuation of 184 Duke of Gloucester, LLC, is omitted entirely from the disclosure statement. If, in accordance with the Proposed Plan, $600,000 is paid from the proceeds of the sale of the Debtor's principal residence towards the cross-collateralized debt held by the Estate of Daniel Kohn, there will remain a balance due of less than $400,000. That amount is also secured by the property owned by 184 Duke of Gloucester, LLC, which had a tax assessed value of $735,000 as of 2018, and has only one other possible encumbrance.[4] If the possible encumbrance has been satisfied, 184 Duke of Gloucester, LLC would have an estimated post-plan liquidation equity value of approximately $350,000. As a 70% owner of the entity, the Estate of the Debtor would have an equity stake with an approximate value of $250,000.

23. The "Liquidation Analysis," section XX of the Proposed Disclosure Statement, does not address the value or possibility of sale of the Debtor's equity interest in either Tradeways

---

[4] The property may be subject to a 2003 mortgage to a Robert M. Wood. This mortgage was in the initial amount of $310,000, and should have been completely paid as of 2014, but neither extension nor release has been filed with the Maryland land records.

or 184 Duke of Gloucester, LLC.

24. In addition to netting cash to the Estate, the sale of 184 Duke of Gloucester, LLC, would simultaneously satisfy the remaining debt to the Estate of Daniel Kohn, which would eliminate the required $10,000 monthly Proposed Plan payment to the Estate of Daniel Kohn for the life of the plan.

25. If the Debtor is no longer required to withdraw that money from Tradeways to make monthly payments to the Estate of Daniel Kohn, Debtor would be free to apply that disposable income to the claims of the General Unsecured Creditors instead. Over the life of the plan, this reapplication of disposable income would contribute an additional $600,000 to the General Unsecured Creditors, more than sufficient to fully repay 100% of their claims.

**The Disclosure Statement Lacks Adequate Information
about Ownership and Transfer of Non-Scheduled Real Property**

26. On September 16, 1975, Joseph George Gorski purchased a single-family home located at 322 Lawyers Road in Vienna, Virginia, for $68,500.

27. This property was not identified in Debtor's schedules. Debtor testified under oath at the § 341 meeting that he did not own any other real property, other than the principal residence in Annapolis, Maryland.

28. On August 27, 2019, Joseph G. Gorski transferred the Vienna real property to Barbara J. Gorski, for $0.

29. This transfer was made post-petition.

30. This transfer was made from the Debtor to his ex-wife.

31. The Proposed Disclosure Statement is silent on the ownership of the Vienna property, as well as the post-petition transfer thereof without authority and without consideration.

**The Disclosure Statement Omits Relevant Information
about Debtor In Possession's Post-Petition Management**

32. Since filing for bankruptcy, Debtor In Possession has made at least two payments to Ms. Kathleen Monroe. In February 2019, Debtor wrote two checks to Ms. Monroe, one for $500, the other for $5,000. These were collectively characterized in the MOR as "Gift (will be returned)" but the MOR is silent on the terms of repayment. (Doc. 21 pp. 2, 5.) On October 8, 2019, Debtor wrote another check from the DIP Account (# 296), for $6,325. This transfer may also have been to Ms. Monroe, but was omitted completely from the cash disbursement detail. (Doc. 63 pp. 5, 9, 11.) Debtor has failed to respond to the U.S. Trustee's request for more information on this transaction.

33. None of these transfers were disclosed in the Proposed Disclosure Statement.

34. There is no evidence that any of these transfers have been repaid to the estate of the Debtor, in part or in full.

35. In order to be provided adequate information on whether Ms. Monroe is an insider, voting creditors must be provided with details as to the nature of her relationship with the Debtor.

36. In order to determine if these transfers represent one or more voidable executory contracts, voting creditors must be informed as to the nature of the contract and, if a loan, the terms of repayment.

37. Under penalty of perjury, the Debtor answered "Yes" to the question "Did you pay all your bills on time this month?" on the cover sheet of each of the nine MORs submitted to date. (p. 1 of each of Doc. 21, 22, 30, 36, 37, 45, 49, 57, 63.)

38. During the § 341 meeting, Debtor testified under oath that there was a payment of $350 per month due to SunTrust Bank, secured by a second mortgage on his primary residence.

39. Debtor paid nothing on this monthly obligation in February. (Doc. 21). Debtor made two payments of $350 each in March. (Doc. 22). Debtor paid nothing on this monthly obligation in the following months: April, May, June, July, August, and September. (Doc. 30, 36, 37, 45, 49, 57.) Debtor paid one payment of $2,800 in October. (Doc. 63.)

40. Debtor's assertion in Section IV of the Proposed Disclosure Statement that "The Debtor has maintained timely post-petition payments to his creditors" is incorrect.

41. Debtor currently owes $325 in quarterly fees, which were due October 31, 2019.

42. Debtor's assertion in Section IV of the Proposed Disclosure Statement that "The Debtor … is believed to be current on his obligations to file operating reports and pay quarterly fees" is incorrect.

### The Disclosure Statement Lacks Adequate Information about the Absolute Priority Rule

43. The Proposed Disclosure Statement also cannot be approved because it does not contain adequate information regarding the absolute priority rule.

44. The Fourth Circuit has ruled that "the absolute priority rule as it applies to individual debtors in Chapter 11 has not been abrogated by BAPCPA". *In re Maharaj*, 681 F.3d 558, 575 (4th Cir. 2012).

45. As stated above, Debtor proposes to retain $20,000 in personalty in addition to his interests in two businesses of unknown valuation. Proposed Disclosure Statement pp. 14-19.

46. Also as stated above, Debtor proposes to pay less than 100% of general unsecured claims, yet the Proposed Disclosure Statement contains no discussion of the absolute priority rule.

47. When Debtors plan "to retain property when unsecured creditors are not being paid in full, the Disclosure Statement should include "a discussion of the absolute priority rule and an

explanation as to why the Debtor believes that [the Plan] satisfie[s] the absolute priority rule". *In re Ferguson*, 474 B.R. 466, 477 (Bankr. D.S.C. 2012).

### The Plan Described by the Disclosure Statement Lacks an Adequate Means of Implementation

48. Pursuant to Section 1123 of the Bankruptcy Code, a Plan must "provide adequate means of implementation . . . ." 11 U.S.C. § 1123(a)(5). As set forth above, implementation of the Plan is dependent upon the sale of all of the Debtor's directly owned real property.

49. The Debtor has not indicated when, at what price, to whom, or even how any such real property will be sold other than indicating a date by which Debtor plans to list the properties for sale: October 1, 2020, nearly a year in the future.

50. A liquidation plan must provide a date by which an anticipated sale will take place as well as other specific details for the sale of property in order to satisfy the requirements of 11 U.S.C. §1123(a)(5). *In re Walker*, 165 B.R. 994 (Bankr. E.D. Va. 1994).

### The Plan Described by the Disclosure Statement Is Not Feasible

51. In order for a plan to be confirmed, the Bankruptcy Code requires that the Debtor prove that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." 11 U.S.C. § 1129(a)(11).

52. To demonstrate feasibility, the Debtor must prove through concrete evidence that there will be sufficient cash to fund the Plan and maintain operations according to the Plan. *In re Nelson*, 84 B.R. 90 (Bankr. W.D. Tex. 1988); *In re Merrimack Valley Oil Co.*, 32 B.R. 485 (Bankr. D. Mass. 1983).

53. The Debtor testified at the 341 meeting that the principal residence has already been

on the market for over a year (over 18 months at the time of this filing). The property was initially listed at $1,900,000, the asking price was reduced to $1,600,000. Debtor further testified that he had received two or three offers for the purchase of the principal residence. The highest "offer" received was for $1,400,000 and, while that offer was reduced to writing, Debtor advised the undersigned that the offeror never signed the offer.

54. This case proposes sales of property as the principal means of funding. The largest asset has not successfully been sold over an 18-month period of marketing.

55. The highest offer received for that asset does not support the payments proposed to be made from the proceeds of that sale and neither the Proposed Plan nor the Proposed Disclosure Statement offer any information to support any higher valuation of the asset.

56. Neither the Proposed Plan nor the Proposed Disclosure Statement identify a date for auction of either of the properties, should another year or two of listing yield a similar lack of results. A liquidation plan must provide a date by which an anticipated sale will take place as well as other specific details for the sale of property in order to satisfy the requirements of 11 U.S.C. §1123(a)(5). *In re Walker*, 165 B.R. 994 (Bankr. E.D. Va. 1994).

57. Debtor proposes only that creditors should wait and see what happens because sales at some time, for some amount, might produce a payment. Debtor cannot carry his burden to prove feasibility. *See In re Calvanese*, 169 B.R. 104 (Bankr. E.D. Pa. 1994) and cases cited therein.

58. This Court may deny approval of this disclosure statement, even if it provides adequate information about the proposed plan, if the plan could not possibly be confirmed under the requirements of Section 1129 of the Bankruptcy Code. *In re Criimi Mae, Inc*. 251 B.R. 796, 799 (Bankr. D. Md. 2000) *citing In re Main Street AC, Inc*., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999).

**Rule Statements**

59. The U.S. Trustee submits that no novel issue of law is presented with respect to the matters contained herein. Accordingly, pursuant to Local Bankruptcy Rule 9013-2, the U.S. Trustee states that no memorandum of law will be filed in support of this objection and the U.S. Trustee relies solely on the grounds and authorities set forth herein.

60. The U.S. Trustee consents to entry of a final order or judgment in this matter by a bankruptcy judge.

**CONCLUSION**

The Disclosure Statement does not contain adequate information as defined and required by the Bankruptcy Code. Specifically, it fails to provide adequate information about the value of the Debtor's business interests, the Debtor In Possession's post-petition management of the Estate, the absolute priority rule, and the feasibility of asset sales. For these reasons, the Disclosure Statement must be disapproved.

Respectfully submitted

Dated: December 5, 2019

John P. Fitzgerald, III
Acting United States Trustee, Region Four

By: /s/ *Katherine A. Levin*
Katherine A. Levin (Fed. Bar No. 10916)
United States Department of Justice
101 W. Lombard Street, Suite 2650
Baltimore, MD 21201
(410) 962-4300

- 14 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this 5th day of December, 2019, a copy of the foregoing Objection was mailed, first class, postage prepaid, to:

Joseph J. Gorski
400 Ferry Point Road
Annapolis, MD  21403

and that according to the Court's CM/ECF system, the following parties will receive electronic service of the Objection:

- Steven L. Goldberg     sgoldberg@mhlawyers.com, dmoorehead@mhlawyers.com, sgoldberg@ecf.inforuptcy.com, jsantana@mhlawyers.com, sshin@mhlawyers.com
- Nikita Rajendra Joshi     Nikita.Joshi@bww-law.com, bankruptcy@bww-law.com
- Katherine A. (UST) Levin     Katherine.A.Levin@usdoj.gov, brenda.b.wilmore@usdoj.gov
- Dominique Veronica Sinesi     sinesi.dominique@dol.gov
- US Trustee - Baltimore     USTPRegion04.BA.ECF@USDOJ.GOV
- Jonathan M. Wall     jwall@hwlaw.com, mshipley@hwlaw.com, cgay@hwlaw.com, lhendricks@hwlaw.com

/s/ *Katherine A. Levin*
Katherine A. Levin