**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Baltimore Division**

In re:

JOSEPH G. GORSKI,               \*

                               \*       Case No.  19-11500-DER

        Debtor.        \*       Chapter 11

                               \*

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

Joseph G. Gorski, Debtor and Debtor-in-possession (the "Debtor"), by and through his attorneys, McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A. hereby respectfully submits the following Amended Plan of Reorganization pursuant to the provisions of Chapter 11 of Title 11, United States Code.

## ARTICLE I
## Definitions

a.      <u>Administrative Expense Priority Claim</u>- any claim or right to payment incurred or arising on or after the Petition Date which is entitled to priority pursuant to §§503(b) and 507(a)(1) of the Bankruptcy Code. Administrative Expense Claims include the Claims of professionals who provide services to the Debtor, and creditors who may extend credit or provide services to the Debtor subsequent to the Petition Date.

b.      <u>Allowed Claim(s)</u> - the amount of each claim determined due by the Bankruptcy Court pursuant to the Bankruptcy Code and the Bankruptcy Rules of Procedure.  In the event that Debtor disputes the amount, security or priority of any claim, the amount payable will be determined through an objection to claim and an evidentiary hearing before the Bankruptcy Court, unless settled by the consent of all parties.

c.      <u>Bankruptcy Code</u> – shall mean the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended from time to time, and codified at 11 U.S.C. §§101 <u>et</u> <u>seq</u>.

1

      d.     <u>Bankruptcy Court</u> – shall mean the United States Bankruptcy Court for the District of Maryland, Baltimore Division, or any other court having jurisdiction over the Debtor's Chapter 11 Case or any proceeding arising under or arising in or related to the Debtor's Chapter 11 Case.

      e.     <u>Bankruptcy Rules</u> – shall mean the Federal Rules of Bankruptcy Procedure currently in effect, as amended.

      f.     <u>Bar Date</u> - the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) as the date by which Claims which must be filed shall be filed, failing which such Claims may be disallowed for purposes of voting or distribution.  Further, no Claims shall be amended, modified or transferred after the Bar Date.  The Bar Date in this Chapter 11 case is to be set.

      g.     <u>Chapter 11 Case</u> - the Chapter 11 case of Joseph G. Gorski, Case No. 19-11500-DER, pending in the United States Bankruptcy Court for the District of Maryland (Baltimore Division).

      h.     "<u>Claim</u>" shall mean:

          (i)    a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured.

          (ii)   a right to an equitable remedy for breach of a performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

      i.     <u>Class</u> - a Claim or Interest or a group of Claims or Interest consisting of those Claims or Interests which are substantially similar to each other, as classified under the Plan, or a Claim or Interest or group of Claims classified by amount as may be reasonable and necessary as Administrative Claims, or a group of Claims or Interest which are otherwise

2

required to be separately classified.

j.  Confirmation Date - the date when the Confirmation Order becomes a Final Order.

k.  Confirmation Order - the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code.

l.  Consummation of the Plan - the completion of all payments, and fulfillment by the Debtor of all its obligations, under this Plan.

m.  Creditor - shall mean any entity which holds a Claim against the Debtor.

n.  Debt - any liability on a Claim.

o.  Debtor (Debtor-in-possession) – Joseph G. Gorski.

p.  Disallowed Amount - the amount equal to the difference if any, between the Face Amount of a Disputed Claim and the allowed amount of such a Claim.

q.  Disclosure Statement - The Debtor's Amended Disclosure Statement accompanying Debtor's Amended Plan of Reorganization, after approval of the Disclosure Statement by the Bankruptcy Court, including all amendments, and all exhibits attached thereto.

r.  Disputed Claim - any Claim for which an allowed amount has not yet been determined.

s.  Effective Date - The Effective Date of the Plan will be the date thirty (30) days after the entry of a final, non-appealable Order confirming the Debtor's Plan of Reorganization.  If any act required to be performed, or any condition required to exist, on or before the Effective Date, cannot be performed or does not exist as of the Effective Date due to the existence of a Court Order staying or otherwise precluding the execution of the Plan, or any part thereof, then the Effective Date shall be thirty (30) days after the final resolution of any appeal, or appeals, or the final nullification, vacation or modification of any and all Orders

staying or otherwise precluding execution of any material part of the Plan.

        t.    <u>Executory Contracts</u> - those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejections pursuant to §365 of the Bankruptcy Code.

        u.    <u>Face Amount</u> - with respect to a particular Claim, Face Amount means:

    (i)    if the holder of such Claim has not filed a proof of Claim with the Bankruptcy Court by the Bar Date the amount, if any, for which such Claim is listed in the Schedules as fixed, undisputed, noncontingent and liquidated; or

    (ii)    if the holder of such Claim has filed a proof of claim with the Bankruptcy Court by the Bar Date, the amount stated in such proof of claim, unless disallowed or modified by Order of the Bankruptcy Court; or

    (iii)    with respect to an Administrative Expense Claim in the form of an application with allowance of compensation or reimbursement of expenses of Professional Persons filed and pending in the Bankruptcy Court, with net amount to which such professional would be entitled if its application were to be granted in full.

        v.    <u>Final Decree</u> - The final Order concluding the Chapter 11 proceeding of the Debtor, entered by the United States Bankruptcy Court upon consummation of this Plan, or substantial consummation.

        w.    <u>Final Order</u> - an order of a court from which the time for appeal and reconsideration under Bankruptcy Rules 8002 and 9023 has expired without the commencement of an appeal or request for reconsideration, or an order of a court as to which an appeal or reconsideration has been taken, and where such order has been affirmed by appeal, or in the case of reconsideration, such request for reconsideration has been denied, and no appeal from such denial of the request for reconsideration has been taken.

x.      Governmental Agency(y)(ies) - any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

y.      Impaired - shall refer to any Class of claims or Interests treated under the Plan in such a manner as described pursuant to § 1124 of the Bankruptcy Code.

z.      Interest - shall mean the ownership interest(s) held by any person in the Debtor.

aa.      Net Proceeds – with respect to a sale of property pursuant to the Plan, "Net Proceeds" shall mean gross sale proceeds less (i) real estate commissions, (ii) seller's share of taxes, settlement fees, title charges, title insurance premiums, recording costs and fees and (iii) other reasonable and customary fees paid to third parties that are approved either by (a) each secured creditor holding a lien on the property sold that is not paid in full at settlement or (b) or order of the Court.

bb.      Petition (Chapter 11 filing) - the Debtor's voluntary petition in Bankruptcy filed on February 4, 2019.

cc.      Petition Date - shall mean February 4, 2019, the date Debtor voluntarily commenced his Chapter 11 case pursuant to the provisions of the Bankruptcy Code.

dd.      Plan – this Debtor's Amended Plan of Reorganization, submitted by Debtor Joseph Gorski as amended or modified pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

ee.      Principal Residence – shall mean the property known as 400 Ferry Point Road, Annapolis, Maryland 21403.

ff.      Priority Claim - the priority in distribution which is afforded to certain claims against the Debtor pursuant to § 507(a) of the Bankruptcy Code.

5

gg.    <u>Professionals</u> - persons retained or to be compensated pursuant to §§327, 328, 330, 331 and 503(b) of the Bankruptcy Code.

ii.    <u>Pro-Rata</u> - means:

(i)    with respect to Allowed Claims, the same proportion that the Allowed Amount of a Claim of a Creditor in any Class bears to the aggregate of:

(A)    the Allowed Amount of all Claims of that particular Class of Claims or other Classes of Claims, if applicable; plus

(B)    the aggregate Face Amount of all Claims which are subject to dispute as of the Confirmation Date of that particular Class of Claims or other Classes of Claims if applicable, as reduced from time to time as and to the extent that the Disallowed Amount of such Claims is determined, and

(ii)    with respect to Disputed Claims, the same proportion that the Face Amount of a Disputed Claim of a creditor in any Class of Claims bears to the aggregate of:

(A)    the Disputed Amount of all Claims of that particular Class of Claims or other Classes of Claims if applicable; plus

(B)    the aggregate Face Amount of all Claims which are subject to dispute as of the Confirmation Date of that particular Class of Claims or other Classes of Claims if applicable, as reduced from time to time as and to the extent that the Disallowed Amount of such Claims is determined.

hh.    <u>Schedules</u> - the schedules of assets and liabilities, as may be amended, filed by the Debtor with the Bankruptcy Court in the Chapter 11 case; such Schedules may be amended by the Debtor through ninety (90) days following the Effective Date.

ii.    <u>U. S. Trustee</u> - the Office of the United States Trustee in Baltimore, Maryland.

jj.    <u>United States Bankruptcy Court (Bankruptcy Court)</u> - the United States Bankruptcy Court for the District of Maryland or its successor having jurisdiction over the Debtor's estate.

kk.        <u>Unsecured Claim</u> - claim which is not an administrative claim, an allowed secured claim, or a Claim or otherwise entitled to Priority Status, if any.

## ARTICLE II
## Designation of Classes of Claims and Interests

The Debtor has designated the following classes of Creditors in the Plan:

**Class 1:  <u>Allowed Secured Claim of Bank of New York Mellon Trust Company.</u>**

This Class consists of the Allowed Secured Claim of Bank of New York Mellon Trust Company pursuant to a Note dated November 15, 1991, and secured by a Refinance Deed of Trust recorded against the real property located at 400 Ferry Point Road, Annapolis, Maryland 21403 in the original principal amount of $870,000.00.  As of the Petition Date, the Bank of New York Mellon Trust Company asserts a secured claim in the amount of $442,900.53, including pre-petition arrears in the amount of $266,654.38.  The Note is governed by a fixed rate of interest in the amount of 4.5%, which shall remain unchanged.  The Note matures by its terms on December 1, 2021.  By the Debtor's confirmed Plan, the Debtor shall make monthly note payments to the Bank of New York Mellon at the non-default rate of interest of 4.5%.  The Debtor's monthly payment (including escrow for property taxes and insurance) shall be $4,500.00 per month through and including December 31, 2022 (the "Final Date"), at which time the balance, if any, of the Allowed Class 1 Secured Claim shall be paid in full.  Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor shall list the 400 Ferry Point Road Property for sale with a reputable broker no later than March 1, 2021.  On or before the Final Date, the Debtor shall pay the Class 1 Allowed Secured Claim of Bank of New York Mellon Trust Company in full.  If Bank of New York's Class 1 Allowed Secured Claim is not paid in full on or before the Final Date, the Class 1 Claimant may exercise its state court rights and remedies to foreclose on the Principal Residence, or to seek conversion of this case to Chapter 7.  Bank of New York Mellon shall retain its lien on the Ferry Point Road Property.

Class 1 is Impaired and is entitled to Accept or Reject the Plan.

**Class 2:  Allowed Secured Claim of SunTrust Bank.**  This Class consists of the Allowed Secured Claim of SunTrust Bank pursuant to a Home Equity Line of Credit Agreement and Promissory Note dated February 5, 1993 in the original principal amount of $110,000.00. The Home Equity Line of Credit is secured by a Home Equity Line of Credit Deed of Trust recorded against the Principal Residence located at 400 Ferry Point Road, Annapolis, Maryland 21403.   As of the Petition Date, the balance asserted by SunTrust Bank was $35,810.79, including pre-petition arrears in the amount of $706.64.  By the Debtor's confirmed Plan, the Debtor shall make monthly note payments to SunTrust Bank at the non-default rate of interest of 6.5%.  The Debtor's monthly payment shall be $350.00 per month (or such other contractual amount as set forth in the Promissory Note) through and including the Final Date, at which time the Debtor shall pay the Allowed Secured Claim of SunTrust Bank in full.  Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor shall list the 400 Ferry Point Road Property for sale with a reputable broker no later than March 1, 2021.  On or before the Final Date, the Debtor shall pay the Class 2 Allowed Secured Claim of SunTrust Bank, in full.  If SunTrust Bank's Class 2 Allowed Secured Claim is not paid in full on or before the Final Date, the Class 2 Claimant may exercise its state court rights and remedies to foreclose on the Principal Residence, or to seek conversion of this case to Chapter 7.  SunTrust Bank will retain its lien against the Principal Residence.

Class 2 is Unimpaired, and is not entitled to Accept or Reject the Plan.

**Class 3:   Allowed Secured Claim of the Estate of Daniel N. Kohn.**  This Class consists of the Allowed Secured Claim of the Estate of Daniel N. Kohn pursuant to a February 8, 2012 Confessed Judgment Promissory Note between the Estate of Daniel N. Kohn, as payee, and Vienna Establishments, Ltd. a/k/a Tradeways, Ltd., as maker, in the original principal amount of

8

$1,800,000.00.  As of the Petition Date, the balance asserted by the Estate of Daniel N. Kohn was $979,996.23.  The Confessed Judgment Promissory Note is guaranteed by the Debtor, and is secured by an Indemnity Deed of Trust recorded against, among other things, the Principal Residence located at 400 Ferry Point Road, Annapolis, Maryland 21403, and the real property owned by 184 Duke of Gloucester, LLC.   By this Confirmed Plan, the Debtor, and/or Tradeways, Ltd., shall make payments to the holder of the Allowed Class 3 Secured Claim in the amount of $10,000.00 per month, without interest.   Since the Petition Date, Tradeways has been funding the payments to the Estate of Daniel N. Kohn, and intends to continue to fund such payments during the term of this Plan.  The terms and conditions of the Confessed Judgment Promissory Note and the Indemnity Deed of Trust shall remain unchanged, *except, however*, in the event the 400 Ferry Point Road Property is sold, the holder of the Class 3 Allowed Secured Claim shall, as an accommodation to the Debtor, release its lien against the 400 Ferry Point Road Property (only) in exchange for a cash payment at closing in the amount of $600,000.00.  For the avoidance of doubt, and notwithstanding anything to the contrary herein, the balance of the Class 3 Allowed Secured Claim (after payment of the $600,000 at closing) shall remain due and owing, and shall continue to be paid by the Debtor and/or Tradeways, Ltd. in the amount of $10,000.00 per month, secured by the real property and improvements owned by 184 Duke of Gloucester, LLC, as evidenced by that certain deed of trust recorded among the land records for Anne Arundel County at Liber 24301, Folio 416, until the Class 3 Allowed Secured Claim is paid in full.   Subject to the release condition contained in this Class 3, the Estate of Daniel N. Kohn shall retain its lien on the Ferry Point Road Property and any other collateral for which the Class 3 Allowed Secured Claim attaches.

Class 3 is Impaired, and is entitled to vote to accept or reject the Plan

**Class 4:   <u>Allowed Secured Claim of Internal Revenue Service.</u>**  This Class consists of

9

the Allowed Secured Claim of the Internal Revenue Service in the amount of $160,453.45, as evidenced by Amended Proof of Claim No. 1-3 filed in the Bankruptcy Case. The Internal Revenue Service shall be paid, with interest at the applicable rate, in the amount of $2,000.00 per month. The balance of the Allowed Secured Claim of the Internal Revenue Service shall be paid in full within five (5) years of the Petition Date. Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor shall list the 400 Ferry Point Road Property for sale with a reputable broker no later than March 1, 2021. Upon closing on the sale of the Ferry Point Road Property, the holder of the Class 4 Allowed Secured Claim shall be paid in full. The Internal Revenue Service will retain its lien against the 400 Ferry Point Road Property and the Debtor's personal property until such time as the Allowed Class 4 Secured Claim is paid in full.

Class 4 is Impaired, and is entitled to vote to accept or reject the Plan.

**Class 5:** **Allowed Secured Claim of Department of Labor.** This Class consists of the Allowed Unsecured Claim of the Department of Labor, Employee Benefits Security Administration, pursuant to a Consent Judgement dated February 20, 2018, and entered as a Judgment by the United States District Court for the District of Maryland, Case No. 1:18-cv-00732-GLR, against the Debtor and Tradeways, Ltd. in the original amount of $199,414.11. As of the Petition Date, the Department of Labor asserted an outstanding balance due under the Judgment in the amount of $146,575.38. The terms of the Judgment shall remain unchanged, including the obligation of the Debtor and/or Tradeways, Ltd. to make monthly payments in the amount of $5,000.00 per month. Since the Petition Date, Tradeways has been funding the payments to the Department of Labor, and intends to continue to fund such payments during the term of this Plan. Pursuant to an Order of the Bankruptcy Court dated September 23, 2019, this Class 5 Allowed Unsecured Claim is non-dischargeable pursuant to Section 523 of the Bankruptcy Code.

10

Class 5 is Unimpaired, and in not entitled to vote to accept or reject the Plan.

**Class 6:**    **Allowed General Unsecured Claims**:    This Class consists of the Allowed General Unsecured Claims scheduled and/or asserted against the Debtor that are to be paid under the Plan, consisting of the Comptroller of Maryland ($129,616.00); Internal Revenue Service ($366,044.06); Capital One Bank, N.A. ($5,454.17); Bay Engineering, Inc. ($2,049.65); Toyota Motor Credit Corporation ($515.00); Bank of America, N.A. ($938.00); Capital Digestive Care ($490.92); Chase Bank ($13,890.00); Citibank, N.A. ($1,968.00); Professional Business Management ($8,703.36); and RE Robertson Plumbing ($1,623.72).[1]    In full and final satisfaction and discharge of each Allowed Class 6 General Unsecured Claims, each Holder of an Allowed Class 6 Claim shall receive, on a pro-rata basis, in the amount of thirty-one (31%) of their Allowed Claims, in cash, beginning on the Effective Date, followed by semi-annual payments on January 1 and June 1 of each year for a period not to exceed five (5) years from the Effective Date.

Class 6 is Impaired, and is entitled to vote to accept or reject the Plan.

**Allowed Administrative Expense Claims:** The Debtor has not designated any Class for administrative expense claims under §507(a)(2), pursuant to § 1123(a)(1) of the Bankruptcy Code.  The Plan contemplates that, unless otherwise agreed to by the parties, all allowed administrative expense claims shall be accorded treatment and payment as provided for by the Bankruptcy Code and will be paid as described in Articles VI through VIII herein.   The Debtor will pay Administrative Expense Claims, as approved by the Bankruptcy Court, in full, on or before the Effective Date.  The Debtor anticipates Administrative Claims of professionals to amount to approximately $23,000.00.

---

[1] As set forth in Article XIII of the Plan, the Debtor reserves the right under the Plan to object to the extent, amount or validity of the Class 6 Claims.

11

**Allowed Unsecured Priority Claim**: Unsecured Priority Claims, as allowed, consist of the claims of governmental units for prepetition tax liability pursuant to 507(a)(8).  The Comptroller of Maryland asserts and Unsecured Priority Tax Claim in the amount of $54,051.00.  The Internal Revenue Service asserts an Unsecured Priority Tax Claim in the amount of $658,311.36.  To the extent such Allowed Priority Tax Claims are Allowed, such claims shall be paid within sixty (60) months from the Petition Date as required by the Bankruptcy Code with interest at the applicable rate.  As set forth in more detail in Article X and XVIII, the Debtor anticipates that upon the sale of the Principal Residence and the Toledo, Ohio property, Allowed Priority Tax Claims will be curtailed by between $334,000 and $520,000 (depending largely on the sale price of the Principal Residence).  The balance of Unsecured Priority Tax Claims will be paid from the Debtor's income.

**ARTICLE III**
**Description of the Plan of Reorganization**

A.      **Overview**

The Debtor will fund the Plan from income from operations of the Debtor's business, social security income, and from the sale of the Principal Residence and the Toledo Ohio rental property, which properties shall be listed for sale with a reputable agent no later than March 1, 2021.  The Debtor anticipates that upon a sale of the Principal Residence, the holders of Allowed Claims in Classes 1, 2 and 4 will be paid in full.  Class 3 will also be paid in full under the Plan, though the holder of the Class 3 Claim shall retain its lien on and against the 184 Duke of Gloucester property.  The anticipated surplus at closing on the sale of the Principal Residence is expected to be between $264,000 (on the low end) and $450,000.00 (on the high end).  The surplus sale proceeds from the sale of the Principal Residence shall be allocated to the Allowed Priority Tax Claims on a *pro-rata* basis.  Similarly, the net proceeds from the sale of the Toledo,

Ohio property, estimated to be approximately $60,000.00, shall also be allocated, on a *pro-rata* basis, to Allowed Priority Tax Claims.  The sale of the foregoing properties shall result in an aggregate reduction in the Priority Tax Claims of between $324,000.00 and $510,000.00.   The balance of the Priority Tax Claims shall be paid from the Debtor's income.

**B.      Fair and Equitable Treatment of Creditors Pursuant to 11 U.S.C.**

**§ 1129(b)(2)(B)(ii).**

The Debtor will receive no payment under the Plan, unless and until all Creditors are paid in full.  The Debtor maintains that the Plan is fair and equitable to its treatment of Creditors, as provided under §1129(b)(2)(ii) of the Code.

**<ins>ARTICLE IV</ins>**
**<ins>Means of Funding the Plan</ins>**

The Debtor will fund the Plan from income from operations of the Debtor's business, social security income, and from the sale of the Principal Residence and the Toledo Ohio rental property, which properties shall be listed for sale no later than March 1, 2021.   The Debtor anticipates that upon a sale of the Principal Residence, the holders of Allowed Claims in Classes 1, 2 and 4 will be paid in full.  Class 3 will also be paid in full under the Plan, though the holder of the Class 3 Claim shall retain its lien on and against the 184 Duke of Gloucester property. The anticipated surplus at closing on the sale of the Principal Residence is expected to be between $264,000 (on the low end) and $450,000.00 (on the high end).   The surplus sale proceeds from the sale of the Principal Residence shall be allocated to the Allowed Priority Tax Claims on a *pro-rata* basis.  Similarly, the net proceeds from the sale of the Toledo, Ohio property, estimated to be approximately $60,000.00, shall also be allocated, on a *pro-rata* basis, to Allowed Priority Tax Claims.

The Debtor's source of funding for the Plan is attached to the Disclosure Statement as **Exhibit B.**

## ARTICLE V
## Debtor's Business Operations During the Plan

**A.      Management**

The Debtor manages Tradeways, Ltd. and the leasing of his Rental Property and will

continue to do so during the term of the Plan.  The Debtor will continue to manage his financial

affairs as a Debtor-in-Possession Pursuant to 11 U.S.C. §§ 1107 and 1108 of the Code.

**B.      Employees and Location**

The Debtor manages his properties and financial affairs.  The Debtor has no employees.

**C.      Retention of Assets**

Following Confirmation, except as otherwise provided in the Plan, the Debtor will retain

his real and personal property.

## ARTICLE VI
## Claims Summary

The Claims asserted against Debtor are as follows:

**A.      Classes of Claims[2]**

| | | |
|---|---|---|
| **CLASS 1:** | Allowed Secured Claim of Bank of New York Mellon Trust Company: | $442,900.53 |
| **CLASS 2:** | Allowed Secured Claim of SunTrust Bank: | $35,810.79 |
| **CLASS 3:** | Allowed Secured Claim of Estate of Daniel Kohn.: | $979,996.23 |
| **CLASS 4:** | Allowed Secured Claim of IRS: | $160,453.45 |
| **CLASS 5:** | Allowed Unsecured Claim of the Dept. of Labor.: | $146,575.38 |
| **CLASS 6:** | Allowed General Unsecured Claims: | $531,292.88 |

---

[2] The Amounts set forth herein are amounts asserted by the Claimants as of the Petition Date, and do not reflect the
current balance due.
.

**B.**    **Administrative Expense Claims**:  The Administrative Expense Claims, subject
to approval by the Bankruptcy Court, are as follows:

    (1)  Legal expenses:

| | |
|---|---|
| (i) McNamee Hosea, <u>et al</u>. | $23,000.00 |
| (Debtor's Counsel) | [estimated] |

| | |
|---|---|
| (2)  Office of the United States Trustee: | $1,625.00 |
| (to be paid as fee is assessed without further | [estimated] |
| order of Court) | |

**C.**    **Unsecured Priority Claims:**

| | | |
|---|---|---|
| (i) | Internal Revenue Service: | $658,311.36 |
| (ii) | Comptroller of Treasury: | $54,051.00 |

## ARTICLE VII
### Manner of Payment of Claims and Treatment of Interests Under the Plan

**A.**    **Payment of Administrative Expense Priority Claims:**

Debtor will pay the Administrative Expense Claims of professionals, as approved by the
Bankruptcy Court, in full no later than the Effective Date.  The Debtor projects that the
Administrative Expense priority claims for professionals include only those of Debtor's counsel.

Debtor will also continue to make his payments to the Office of the United States Trustee
for quarterly fees as assessed, in a timely manner.  Debtor's payments to the United States
Trustee will be made <u>in addition</u> to the Plan payments to be provided to satisfy the
Administrative Expense priority claims of professionals.

**B.**    **Payment of Unsecured Priority Claims:**

Unsecured Priority Claims, as allowed, consist of the claims of governmental units for
prepetition tax liability pursuant to 507(a)(8).  The Comptroller of Maryland asserts and

Unsecured Priority Tax Claim in the amount of $54,051.00. The Internal Revenue Service asserts an Unsecured Priority Tax Claim in the amount of $658,311.36. To the extent such Allowed Priority Tax Claims are Allowed, such claims shall be paid within sixty (60) months from the Petition Date as required by the Bankruptcy Code with interest at the applicable rate. As set forth in more detail in Article X and XVIII, the Debtor anticipates that upon the sale of the Principal Residence and the Toledo, Ohio property, Allowed Priority Tax Claims will be curtailed by between $334,000 and $520,000 (depending largely on the sale price of the Principal Residence). The balance of Unsecured Priority Tax Claims will be paid from the Debtor's income.

      **C.    Payment of Secured Claim of Bank of New York Mellon Trust Company. Class 1**

This Class consists of the Allowed Secured Claim of Bank of New York Mellon Trust Company pursuant to a Note dated November 15, 1991, and secured by a Refinance Deed of Trust recorded against the real property located at 400 Ferry Point Road, Annapolis, Maryland 21403 in the original principal amount of $870,000.00. As of the Petition Date, the Bank of New York Mellon Trust Company asserts a secured claim in the amount of $442,900.53, including pre-petition arrears in the amount of $266,654.38. The Note is governed by a fixed rate of interest in the amount of 4.5%, which shall remain unchanged. The Note matures by its terms on December 1, 2021. By the Debtor's confirmed Plan, the Debtor shall make monthly note payments to the Bank of New York Mellon at the non-default rate of interest of 4.5%. The Debtor's monthly payment (including escrow for property taxes and insurance) shall be $4,500.00 per month through and including December 31, 2022 (the "Final Date"), at which time the balance, if any, of the Allowed Class 1 Secured Claim shall be paid in full. Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor shall list the 400 Ferry Point Road Property for sale with a reputable broker no later than March 1, 2021. On or before

the Final Date, the Debtor shall pay the Class 1 Allowed Secured Claim of Bank of New York

Mellon Trust Company in full.  If Bank of New York's Class 1 Allowed Secured Claim is not

paid in full on or before the Final Date, the Class 1 Claimant may exercise its state court rights

and remedies to foreclose on the Principal Residence, or to seek conversion of this case to

Chapter 7.  Bank of New York Mellon shall retain its lien on the Ferry Point Road Property.

       Class 1 is Impaired and is entitled to Accept or Reject the Plan.

**D.**    **Payment of Allowed Secured Claim of SunTrust Bank.**

       **Class 2**

       This Class consists of the Allowed Secured Claim of SunTrust Bank pursuant to a Home

Equity Line of Credit Agreement and Promissory Note dated February 5, 1993 in the original

principal amount of $110,000.00.  The Home Equity Line of Credit is secured by a Home Equity

Line of Credit Deed of Trust recorded against the Principal Residence located at 400 Ferry Point

Road, Annapolis, Maryland 21403.   As of the Petition Date, the balance asserted by SunTrust

Bank was $35,810.79, including pre-petition arrears in the amount of $706.64.  By the Debtor's

confirmed Plan, the Debtor shall make monthly note payments to SunTrust Bank at the non-

default rate of interest of 6.5%.  The Debtor's monthly payment shall be $350.00 per month (or

such other contractual amount as set forth in the Promissory Note) through and including the

Final Date, at which time the Debtor shall pay the Allowed Secured Claim of SunTrust Bank in

full.  Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor

shall list the 400 Ferry Point Road Property for sale with a reputable broker no later than March

1, 2021.  On or before the Final Date, the Debtor shall pay the Class 2 Allowed Secured Claim of

SunTrust Bank, in full.  If SunTrust Bank's Class 2 Allowed Secured Claim is not paid in full on

or before the Final Date, the Class 2 Claimant may exercise its state court rights and remedies to

foreclose on the Principal Residence, or to seek conversion of this case to Chapter 7.  SunTrust

Bank will retain its lien against the Principal Residence.

Class 2 is Unimpaired, and is not entitled to Accept or Reject the Plan.

    **E.**    **Payment of Allowed Secured Claim of Estate of Daniel N. Kohn**
              **Class 3**

This Class consists of the Allowed Secured Claim of the Estate of Daniel N. Kohn pursuant to a February 8, 2012 Confessed Judgment Promissory Note between the Estate of Daniel N. Kohn, as payee, and Vienna Establishments, Ltd. a/k/a Tradeways, Ltd., as maker, in the original principal amount of $1,800,000.00. As of the Petition Date, the balance asserted by the Estate of Daniel N. Kohn was $979,996.23. The Confessed Judgment Promissory Note is guaranteed by the Debtor, and is secured by an Indemnity Deed of Trust recorded against, among other things, the Principal Residence located at 400 Ferry Point Road, Annapolis, Maryland 21403, and the real property owned by 184 Duke of Gloucester, LLC. By this Confirmed Plan, the Debtor, and/or Tradeways, Ltd., shall make payments to the holder of the Allowed Class 3 Secured Claim in the amount of $10,000.00 per month, without interest. Since the Petition Date, Tradeways has been funding the payments to the Estate of Daniel N. Kohn, and intends to continue to fund such payments during the term of this Plan. The terms and conditions of the Confessed Judgment Promissory Note and the Indemnity Deed of Trust shall remain unchanged, *except, however*, in the event the 400 Ferry Point Road Property is sold, the holder of the Class 3 Allowed Secured Claim shall, as an accommodation to the Debtor, release its lien against the 400 Ferry Point Road Property (only) in exchange for a cash payment at closing in the amount of $600,000.00. For the avoidance of doubt, and notwithstanding anything to the contrary herein, the balance of the Class 3 Allowed Secured Claim (after payment of the $600,000 at closing) shall remain due and owing, and shall continue to be paid by the Debtor and/or Tradeways, Ltd. in the amount of $10,000.00 per month, secured by the real property and improvements owned by 184 Duke of Gloucester, LLC, as evidenced by that certain deed of

18

trust recorded among the land records for Anne Arundel County at Liber 24301, Folio 416, until

the Class 3 Allowed Secured Claim is paid in full.   Subject to the release condition contained in

this Class 3, the Estate of Daniel N. Kohn shall retain its lien on the Ferry Point Road Property

and any other collateral for which the Class 3 Allowed Secured Claim attaches.

Class 3 is Impaired, and is entitled to vote to accept or reject the Plan.

**F.      Payment of Allowed Secured Claim of the Internal Revenue Service
Class 4**

This Class consists of the Allowed Secured Claim of the Internal Revenue Service in the

amount of $160,453.45, as evidenced by Amended Proof of Claim No. 1-3 filed in the

Bankruptcy Case.  The Internal Revenue Service shall be paid, with interest at the applicable

rate, in the amount of $2,000.00 per month.  The balance of the Allowed Secured Claim of the

Internal Revenue Service shall be paid in full within five (5) years of the Petition Date.

Notwithstanding anything to the contrary, under the Debtor's Confirmed Plan, the Debtor shall

list the 400 Ferry Point Road Property for sale with a reputable broker no later than March 1,

2021.  Upon closing on the sale of the Ferry Point Road Property, the holder of the Class 4

Allowed Secured Claim shall be paid in full.  The Internal Revenue Service will retain its lien

against the 400 Ferry Point Road Property and the Debtor's personal property until such time as

the Allowed Class 4 Secured Claim is paid in full.

Class 4 is Impaired, and is entitled to vote to accept or reject the Plan.

**G.      Payment of Allowed Unsecured Claim of the Department of Labor.
Class 5**

This Class consists of the Allowed Unsecured Claim of the Department of Labor,

Employee Benefits Security Administration, pursuant to a Consent Judgement dated February

20, 2018, and entered as a Judgment by the United States District Court for the District of

Maryland, Case No. 1:18-cv-00732-GLR, against the Debtor and Tradeways, Ltd. in the original

amount of $199,414.11.   As of the Petition Date, the Department of Labor asserted an outstanding balance due under the Judgment in the amount of $146,575.38.   The terms of the Judgment shall remain unchanged, including the obligation of the Debtor and/or Tradeways, Ltd. to make monthly payments in the amount of $5,000.00 per month.   Since the Petition Date, Tradeways has been funding the payments to the Department of Labor, and intends to continue to fund such payments during the term of this Plan.   Pursuant to an Order of the Bankruptcy Court dated September 23, 2019, this Class 5 Allowed Unsecured Claim is non-dischargeable pursuant to Section 523 of the Bankruptcy Code.

Class 5 is Unimpaired, and is not entitled to vote to accept or reject the Plan.

**H.     Payment of Allowed General Unsecured Claims:
Class 6**

This Class consists of the Allowed General Unsecured Claims scheduled and/or asserted against the Debtor that are to be paid under the Plan, consisting of the Comptroller of Maryland ($129,616.00); Internal Revenue Service ($366,044.06); Capital One Bank, N.A. ($5,454.17); Bay Engineering, Inc. ($2,049.65); Toyota Motor Credit Corporation ($515.00); Bank of America, N.A. ($938.00); Capital Digestive Care ($490.92); Chase Bank ($13,890.00); Citibank, N.A. ($1,968.00); Professional Business Management ($8,703.36); and RE Robertson Plumbing ($1,623.72).[3]   In full and final satisfaction and discharge of each Allowed Class 6 General Unsecured Claims, each Holder of an Allowed Class 6 Claim shall receive, on a pro-rata basis, in the amount of thirty-one (31%) of their Allowed Claims, in cash, beginning on the Effective Date, followed by semi-annual payments on January 1 and June 1 of each year for a period not to exceed five (5) years from the Effective Date.

Class 6 is Impaired, and is entitled to vote to accept or reject the Plan.

---

[3] As set forth in Article XIII of the Plan, the Debtor reserves the right under the Plan to object to the extent, amount or validity of the Class 6 Claims.

I.      **Plan Payments and Effect of Plan Confirmation:**

Except as otherwise set forth herein, Plan payments will begin on the Effective Date. The Effective Date is the date that is thirty (30) days after the entry of a final, non-appealable Order confirming the Plan, as defined in Article I herein.  The Debtor will act as the disbursement agent for the Plan payments.

Confirmation of this Plan constitutes a binding contract between the Debtor and all of his Creditors, and is enforceable against each such creditor, whether or not each such Creditor accepted the Debtor's Plan.

J.      **Event of Default:**

An event of default under the Plan shall occur if the Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than ten (10) days after the time specified in the Plan for such payment or other performance ("Event of Default").  Upon the occurrence of an Event of Default, the Creditor shall serve by first class mail to Debtor and Debtor's attorney a written notice of default and a ten (10) day opportunity to cure or to move to obtain from the Bankruptcy Court an extension of time to cure the default, or a determination that no default occurred.  In the event the Debtor fails to cure the default or seek and obtain an extension to cure from the Bankruptcy Court, any Creditor or party-in-interest shall have the immediate right to exercise their state court rights and remedies against the Debtor, or seek conversion of the Debtor's case to Chapter 7.  Absent agreement of all Creditors, the Debtor shall not be entitled to an extension of the Final Date and a notice of an Event of Default under such circumstance shall not be necessary or required.

## ARTICLE VIII
## Contracts and Unexpired Leases

The Debtor is party to a certain unexpired lease of residential real property located at 803 Mayfair Blvd, Toledo, Ohio 43612.  The unexpired between the Debtor and the tenant of the

Mayfair Blvd. property shall be assumed as of the Confirmation Date. All other executory contracts and unexpired leases shall be rejected, unless such contracts are the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code prior to the Effective Date.

## ARTICLE IX
## Transfer Tax Exemption for Sales of Property Following Entry of Confirmation Order

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax. The Debtor intends to seek the benefits of Section 1146 with respect to the sale of the Principal Residence and the Mayfair Road Property, which are critical and necessary components of the Debtor's Plan of Reorganization. All sales of the properties described herein which close on or after entry of the Confirmation Order, if any, shall be sold free of any state, federal, county, municipal, stamp, real estate transfer, mortgage recording or other similar tax pursuant to 11 U.S.C. §1146(a).

## ARTICLE X
## Preferences and Avoidable Transfers

Any action by Debtor or any other authorized party-in-interest to recover property of the estate and avoid any transfer pursuant to §§542, 543, 544, 547, 548 or 549 of the Bankruptcy Code shall be commenced by the filing of a complaint pursuant to Bankruptcy Rule 7003 within thirty (30) days following the Effective Date.

22

### ARTICLE XI
### Modification of the Plan

Alterations of, or modifications to, this Plan may be made by the Debtor in accordance with the applicable provisions of §1127 of the Bankruptcy Code, and the applicable Bankruptcy Rules.  Notice shall be given of the alteration or modification as soon as possible to all creditors, except as may be waived pursuant to a determination by the United States Bankruptcy Court.

### ARTICLE XII
### Retention of Property

Upon confirmation of this Plan, and except as otherwise set forth herein, the Debtor shall retain his real and personal property subject to the liens as described in this Plan.  In consideration of the Debtor's retention of exempt and non-exempt assets, the Debtor shall tender the sum of Twenty Dollars ($20,000.00) from non-estate assets on the Effective Date to be used to pay Allowed Administrative Claims.

Upon confirmation of this Plan of Reorganization, as may be modified from time to time, the Debtor shall be free to operate his business without restriction and to use, sell or otherwise dispose of its property, or obtaining financing in a manner not inconsistent with this Plan or any Order issued by the United States Bankruptcy Court.

### ARTICLE XIII
### Disputed Claims Procedure

Except as otherwise set forth in this Plan, the Debtor and all Creditors shall be entitled to object to Claims, including any Claim which has been listed by the Debtor in the Schedules in an amount not disputed or contingent.  Any objections to such Claims (other than Fee Claims) shall be served and filed on or before the later of: (a) thirty (30) days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof.

To the extent a Claim is a Disputed Claim, the Debtor shall not be required to make the

applicable disputed portion of a payment to the holder of such Disputed Claim which would

otherwise be payable to the holder of a Disputed Claim.  In the event that a Disputed Claim is

subsequently allowed, the Debtor shall thereafter promptly pay the appropriate amount to the

holder of the Claim in accordance with the terms of the Plan and in the same manner as any other

creditor of the same Class, including any accrued but unpaid disbursements under the Plan.

### ARTICLE XIV
### Discharge, Injunction and Full Satisfaction of Creditors
### Discharge of Indebtedness and Injunction Relating to the Plan

Upon completion of the Plan, by Court Order, all of the remaining claims asserted against

the Debtor by creditors in each class included the Plan, shall be, to the fullest extent permitted by

§1141 of the Bankruptcy Code, satisfied, settled, released and discharged as against the Debtor,

for any debt that arose before the Confirmation Date and any debt of a kind specified in §§502

and 503 of the Bankruptcy Code and all claims of any nature, whether or not (i) a proof of claim

based on such debt or obligation is filed or deemed filed under §501 of the Bankruptcy Code, (ii)

such Claim is allowed under §502 of the Bankruptcy Code, or (iii) the holder of such Claim has

accepted the Plan.

Accordingly, upon the Effective Date, all persons or entities which could have been

claimants, and all actual claimants listed herein, shall be precluded from asserting any Claim

against Debtor (other than the Allowed Claims), based upon any act or omission, transaction or

other activity of any kind or nature that occurred prior to the Effective Date, and the

Confirmation Order shall permanently enjoin all such person or entities, and their successors and

assigns, from enforcing or seeking to enforce any such Claim against the Debtor.

### ARTICLE XV
### Unclaimed Disbursements

In the event that a creditor with an Allowed Claim fails to cash all disbursement checks

provided for under the Plan within one-hundred twenty (120) days from the date of such

check(s), the Debtor shall provide written notice to such creditor, as well as creditor's agent authorized by law to accept service, by certified mail, return receipt requested, advising Creditor that Creditor's failure to negotiate such check(s) will result in forfeiture of Creditor's right to payment under the Plan. In the event Creditor does not negotiate the payment(s) within thirty (30) days from the date of such notice, said creditor shall forfeit all rights to any payment under the Plan and shall have no Claim whatsoever against the Debtor or creditors with Allowed Claims. Any disbursements so forfeited shall be returned to the Debtor and will be redistributed to creditors on a pro rata basis, or if Creditors have been paid in full, the forfeited disbursements shall be returned to the Debtor.

## ARTICLE XVI
## Closure of Case

Pursuant to Federal Rule of Bankruptcy Procedure 3022 and Local Bankruptcy Rule 3022-1, the Debtor intends to request that the Bankruptcy Case be closed following six (6) months after the entry of a final non-appealable order of confirmation.

## ARTICLE XVII
## Retention of Jurisdiction

The United States Bankruptcy Court shall retain exclusive jurisdiction after Confirmation of this Plan of all matters arising from or related to the Plan, for as long as necessary for the purpose of §§105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, inter alia, the following purposes:

(i)  Determination and liquidation of all claims or disputes arising there from, and until all litigation to which the Debtor is a party is terminated.

(ii)  The classification of any creditor in the re-examination of its claim, which has been allowed for the purposes of voting, in the determination of any objection to the creditor's claim.

25

The Debtor's failure to object to or to examine any claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's right to object or to re-examine the claim and holder in part.

(iii)  Determination of all questions and disputes regarding titles to the assets of the estate, and determination of all causes of actions, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation between the Debtor and the other party, including, but not limited to, any right of the Debtor to receive assets pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code.

(iv)  Determination of any and all applications for allowance of compensation and reimbursement of expenses arising out of or relating to this Chapter 11 case of any claims, including the fees and expenses of professionals retained by the Debtor for services provided prior to the Confirmation Date.

(v)  The correction of any defects, the curing of any omission, or the reconciliation of any inconsistencies in this Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of this Plan.

(vi)  The modification of this Plan after Confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

(vii)  The enforcement and interpretation of the terms and conditions of this Plan. All disputes concerning the Debtor or its Property, sales and distributions, if not otherwise resolved, will be resolved by a Motion or Complaint or contested matter filed in this Bankruptcy proceeding.

**/s/ Joseph Gorski**
**Joseph Gorski**

Respectfully submitted,


MCNAMEE, HOSEA, JERNIGAN, KIM
GREENAN & LYNCH, P.A.

 **/s/ Steven L. Goldberg**
Steven L. Goldberg (Fed Bar No. 28089)
6411 Ivy Lane, Suite 200
Greenbelt, Maryland  20770
(301) 441-2420

Attorneys for Joseph Gorski